UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTOPHER P.[1], ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:19-cv-00942-JPH-MPB |
| ) | |
| ANDREW M. SAUL Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Christopher P. seeks judicial review of the Social Security Administration's decision denying his petition for disability insurance benefits and supplemental security income for the period between May 18, 2012 and June 10, 2017. He argues that the decision (1) did not explain why he could do frequent, rather than only occasional, handling and (2) did not account for certain mild limitations in concentration, persistence, or pace. Dkt. 12 at 1–2. For the reasons below, the decision is **REVERSED and REMANDED** for further proceedings.[2]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] The Court **AFFIRMS** the finding that Plaintiff became disabled as of June 11, 2017.

1

# I.
# Facts and Background

In 2012, Plaintiff applied for disability insurance benefits and supplemental security income based on an alleged disability that started on May 18, 2012. Dkt. 8-2 at 15, R. 15. The Social Security Administration ("SSA") denied Plaintiff's application in January 2013 and again on reconsideration in March 2013. *Id.* Administrative Law Judge ("ALJ") Jeffrey Mastin denied Plaintiff's claims in February 2015. Dkt. 8-3 at 52–65, R. 154–67. Plaintiff appealed that denial, and SSA's Appeals Council vacated and remanded for another hearing and decision. *Id.* at 71–74, R. 173–76. In late 2016, ALJ Monica LaPolt held a hearing and denied Plaintiff's claims. Dkt. 8-2 at 12–25, R. 12–25. This time, the Appeals Council denied review. *Id.* at 1–3, R. 1–3.

Plaintiff sought review of that decision in this Court. *See* dkt. 8-31 at 29–32, R. 1899–1902; *Pool v. Berryhill*, 1:17-cv-02369. Following a joint motion to remand, the Court reversed and remanded for further administrative proceedings. *Id.* at 41–42, R. 1911–12.

In late 2018, after another hearing, ALJ LaPolt partially granted and partially denied Plaintiff's request for benefits. Dkt. 8-30 at 2–19, R. 1806–23. In her decision, the ALJ disagreed with Plaintiff's contention that he became disabled in 2012. *Id.* at 8, R. 1812. Instead, she found that Plaintiff became disabled on June 11, 2017. *Id.* In reaching that conclusion, the ALJ followed

the five-step sequential evaluation set forth by SSA in 20 C.F.R. §§ 404.1520(a)(4), 416.920(a). *Id.* at 8–10, R. 1812–14. The ALJ found that:

- At step one, Plaintiff had not engaged in substantial gainful activity[3] since his alleged onset date of May 18, 2012. *Id.* at 10, R. 1814.

- At step two, since the alleged onset date of May 18, 2012, Plaintiff had severe impairments of "mild degenerative disc disease and diffuse pain secondary to either fibromyalgia syndrome or polycythemia." *Id.* Beginning on June 11, 2017, Plaintiff also had chronic pancreatitis. *Id.*

- At step three, Plaintiff did not have "an impairment or combination of impairments that m[et] or medically equal[ed] the severity of one of the listed impairments." *Id.* at 12, R. 1816.

- Between steps three and four, for the period between May 18, 2012 and June 10, 2017, Plaintiff "had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b)." *Id.* at 13, R. 1817. In doing that light work, Plaintiff could "frequently balance . . . [and] handl[e] bilaterally." *Id.* But he could only "occasionally climb ramps and stairs . . . [,] stoop, kneel, crouch, and crawl," and "finger[] bilaterally." And Plaintiff could "never climb ladders, ropes, or scaffolds." *Id.*

- At step four, the ALJ found that since May 18, 2012, Plaintiff could not perform any of his past relevant work. *Id.* at 16, R. 1820.

- At step five, relying on the testimony of the vocational expert and considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform before June 11, 2017, including positions like sales attendant, housekeeping cleaner, and counter attendant. *Id.* at 16–17, R. 1820–21.

Plaintiff now challenges the partial denial under 42 U.S.C. § 405(g).

Dkt. 1.

---

[3] SSA regulations define "substantial gainful activity" as work activity that is both "substantial" ("involves doing significant physical or mental activities") and "gainful" ("usually done for pay or profit, whether or not a profit is realized"). 20 C.F.R. §§ 404.1572(a)–(b), 416.972(a)–(b).

## II.
## Applicable Law

"The Social Security Act authorizes payment of disability insurance benefits . . . to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts." *Id.* at 217. First, it requires an inability to engage in any substantial gainful activity. *Id.* And second, it requires a physical or mental impairment that explains the inability and "has lasted or can be expected to last . . . not less than 12 months." *Id.* "The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id.* at 274.

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)–(v), evaluating in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that

the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's Residual Functional Capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and, if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(e), (g). The burden of proof is on the claimant for steps one through four but shifts to the Commissioner at step five. *See Clifford*, 227 F.3d at 868.

When an applicant seeks judicial review of a benefits denial, courts will uphold an "ALJ's decision if it uses the correct legal standards, is supported by substantial evidence, and builds an accurate and logical bridge from the evidence to the ALJ's conclusion." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). Courts "review the entire record, but . . . do not replace the ALJ's judgment . . . by reconsidering facts, re-weighing or resolving conflicts in the evidence, or deciding questions of credibility." *Id.* At the same time, a court's "review is limited also to the ALJ's rationales," meaning the Court cannot "uphold an ALJ's decision by giving it different ground to stand upon." *Id.* (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943)).

# III.
# Analysis

Plaintiff argues that the ALJ made two material errors. Dkt. 12 at 1–2. First, the ALJ did not support her finding that Plaintiff could perform frequent, rather than only occasional, handling. *Id.* Second, she did not consider Plaintiff's mild limitations in concentration, persistence, and pace. *Id.* at 2.

## A. Plaintiff's handling limitations

Plaintiff contends that in determining his RFC, the ALJ did not explain why Plaintiff could perform handling "frequently" rather than only "occasionally." *See* dkt. 12 at 18; dkt. 19 at 1–3. The Commissioner responds that the ALJ properly summarized the evidence relating to Plaintiff's handling abilities. Dkt. 18 at 7–10.

A claimant's RFC represents "the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008). The ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 SSR LEXIS 5, at *19; *see Jeske*, 955 F.3d at 595 ("Social Security Ruling 96-8p, . . . binds all components of the Social Security Administration."). The assessment must also address the claimant's "remaining exertional and nonexertional capacities." SSR 96-8p, 1996 SSR LEXIS 5, at *15. Handling limitations fall within a "nonexertional capacity." *Id.* at *16–17. "[A]lmost all jobs" require

"handling (seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands)." *Herrmann v. Colvin*, 772 F.3d 1110, 1112 (7th Cir. 2014) (quoting SSR 85-15, 1985 SSR LEXIS 20, at *18–19). "Significant limitations of . . . handling, therefore, may eliminate a large number of occupations a person could otherwise do." *Id.*

### 1. Findings on Handling

The ALJ determined that Plaintiff had the RFC "to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except: . . . frequent handling bilaterally; and occasional fingering bilaterally." Dkt. 8-30 at 13, R. 1817. "Occasional" means work performed very little to, at most, one-third of the workday (around two hours of an eight-hour workday). *See* SSR 83-10, 1983 SSR LEXIS 30, at *13. In contrast, "frequent" handling would be performed between one-third and two-thirds of the workday (up to around six hours in a normal workday). *Id.* at *14.

The ALJ noted evidence of handling limitations based on Plaintiff's testimony and treatment notes. Dkt. 8-30 at 13–14, R. 1817–18. Plaintiff's testimony indicated that "his hands have gotten worse," and he "has more stiffness" and "difficulty picking up a pitcher of tea, cooking, writing, and woodworking." *Id.* at 13, R. 1817. "[T]hese activities are now painful." *Id.* He also "could [not] use his hands constantly for . . . more than 30 minutes." *Id.* Treatment notes cited Plaintiff's "complaints of chronic diffuse pain" and "reports of cramping in the hands and fingers." *Id.* at 14, R. 1818. These notes also revealed that Plaintiff "has endorsed myalsias and joint pain." *Id.* In

7

addition, "[p]hysical exams have noted swelling and tenderness on palpation of the left hand finger joints, decreased grip strength, left arm weakness, and slight decrease in fine motor control of the digits of the left hand." *Id.* "Despite treatment with prescribed narcotics, [Plaintiff] has continued to report multiple tender points." *Id.*

On the other hand, the ALJ also mentioned evidence that could negate the existence of handling limitations, including neurologic and physical exams, and non-examining medical consultant testimony. *Id.* Plaintiff's "neurologic exam was grossly normal" in July 2016. *Id.* Additional "[n]eurologic exams noted equal grip strength, full strength of the upper and lower extremities bilaterally, and non-focal exams." *Id.* Moreover, in December 2016, Plaintiff's "left-sided weakness resolved within a day." *Id.* As for "diffuse pain," the ALJ indicated that "physical exams have noted some mild abnormalities on occasion, but have been grossly normal overall." *Id.* She also cited Plaintiff's ability "to go camping during this time despite his pain." *Id.*

### 2. Logical Bridge

Plaintiff contends that "there is no logical bridge between the evidence and the ALJ's conclusion about [his] handling abilities." Dkt. 12 at 21; *see* dkt. 19 at 2. The Commissioner does not specifically address the "logical bridge" argument but responds that substantial evidence supports the handling conclusion. *See* dkt 18 at 7–10.

To build the necessary "logical bridge," the decision must explain how the evidence led to the conclusion. *Jeske*, 955 F.3d at 587. While an ALJ "need

8

not provide a complete written evaluation of every piece of testimony and evidence," *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005), an "ALJ is required to articulate h[er] evaluation of relevant medical evidence; merely reciting the evidence does not suffice." *Avery v. Berryhill*, No. 1:16-CV-2312-TWP-TAB, 2017 WL 3404803, at *2 (S.D. Ind. Aug. 8, 2017). Indeed, a reviewing court should at least be able to "discern from the ALJ's . . . analysis whether [s]he considered and dismissed, or completely failed to consider . . . pertinent evidence." *Plessinger v. Berryhill*, 900 F.3d 909, 917 (7th Cir. 2018). And "[w]hen there is divergent evidence to support opposing outcomes,[4] the ALJ must give reasons that build an accurate and logical bridge between the evidence and the ultimate result." *Jenkins v. Astrue*, No. 1:06-CV-0707-DFH-TAB, 2007 WL 2362982, at *6 (S.D. Ind. Aug. 14, 2007).

To build that bridge here, the ALJ therefore had to connect the evidence (Plaintiff's testimony, treatment notes, neurologic and physical exams, Plaintiff's activities, and consultant testimony) with her conclusion that Plaintiff could perform frequent, as opposed to only occasional, handling. *See Jeske*, 955 F.3d at 587. The ALJ concluded that while Plaintiff's limitations "could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully supported prior to June 11, 2017, for the reasons explained in

---

[4] This case's proceedings show opposing outcomes. After the first hearing, ALJ Mastin found that Plaintiff could "occasionally handle, finger, and feel." Dkt. 8-3 at 60, R. 162. But, after the second hearing, ALJ LaPolt found no "manipulative . . . deficit[]." *See* dkt. 8-2 at 21, R. 21. Yet in her final decision, ALJ LaPolt found Plaintiff could perform only frequent handling. Dkt. 8-30 at 13, R. 1817.

this decision." Dkt. 8-30 at 15, R. 1819.  She added that Plaintiff's "statements about the intensity, persistence, and limiting effects of his symptoms are inconsistent with the medical evidence."  *Id.* at 14, R. 1818.  The ALJ also considered consultant testimony:

> The non-examining State agency medical consultants found the claimant capable of a range of light work (1A, 2A, 5A, 6A).  These opinions are given significant weight, as they are generally *consistent with the record as a whole*.  However, evidence received at the hearing level, particularly the occasional minimal abnormal findings on physical exams, supports handling and fingering limitations.
>
> Based on the foregoing, I find the claimant had the above residual functional capacity assessment prior to the established onset date, which is *supported by the overall record*, particularly the objective medical findings, the opinions of the non-examining physicians and psychologists, and the claimant's treatment history.

*Id.* at 15, R. 1819 (emphases added).

The Seventh Circuit "discourage[s] the use of boilerplate [language] without a more thorough explanation of which evidence is inconsistent with the applicant's testimony and why."  *Dunn v. Saul*, 794 F. App'x 519, 523 (7th Cir. 2019) (addressing ALJ's conclusion that "statements concerning the intensity, persistence, and limiting effects of [claimant's] symptoms were not entirely consistent with other evidence in the record.").  "[U]nder [SSA's] own policy statements, an ALJ cannot simply say that statements about the individual's symptoms are (or are not) supported or consistent with the record."  *Id.* (quoting SSR 16-3p, 2016 WL 1119029, at *9).

10

Here, the ALJ found that Plaintiff's statements about his "symptoms are inconsistent with the medical evidence." Dkt. 8-30 at 14, R. 1818. This, however, does not explain *why* the ALJ rejected Plaintiff's evidence on handling limitations—the crucial bridge that could connect her conclusion to the evidence.

The ALJ cited pieces of the medical record before reaching her conclusion. Dkt. 8-30 at 14–15, R. 1818–19.[5] But none of that evidence specifically references handling. *See id.* Nor does the ALJ explain how the cited evidence affects Plaintiff's handling. Without any explanation of how that evidence affects Plaintiff's handling specifically, it cannot form the necessary logical bridge. *See Andrew H. v. Saul,* No. 1:18-CV-01318-SEB-DLP, 2019 WL 3940633, at *6 (S.D. Ind. Aug. 21, 2019) (remanding on logical-bridge grounds because ALJ did not "clearly explicate [her] findings and conclusions" on claimant's "limitations with handling and fingering"); *Springer v. Saul,* No. 2:19-CV-197-JEM, 2020 WL 4932539, at *4 (N.D. Ind. Aug. 24, 2020) (remanding

---

[5] "Surgery was not indicated and treatment has been conservative, consisting primarily of pain medication (e.g., 24F, 31F). Deconditioning was noted, and regular physical activity was recommended (Id.). The claimant was discharged from physical therapy after eight visits due to his reported pain remaining high at all times (17F/1). However, he was able to go camping during this time despite his pain (17F/16). The record reflects no orthopedic treatment since November 2014. With respect to the claimant's diffuse pain, physical exams have noted some mild abnormalities on occasion, but have been grossly normal overall. He attended pain management on only three occasions, from January through August 2016 (31F). There are numerous references to noncompliance with treatment recommendations, including medication, physical activity and stretching, smoking cessation, and abstinence from alcohol (e.g., 9F/3; 21F/1, 6, 8, 17; 22F/13; 26F/19, 21, 27; 27F/3, 58, 61; 30F/2, 6-8; 31F/3; 32F/19; 33F/281). From the last hearing until the established onset date, his complaints of pain, syncope, and weakness have coincided with acute alcohol intoxication on all but one occasion (34F-36F, 38F)."

when ALJ cited evidence that "did not build a logical bridge . . . as to [claimant's] hand issues specifically.").

The ALJ's decision therefore leaves unclear "whether [s]he considered and dismissed, or completely failed to consider, . . . pertinent evidence" about handling. *Plessinger*, 900 F.3d at 917 (7th Cir. 2018). As a result, the ALJ's decision lacks a logical bridge explaining how the evidence supports a finding that Plaintiff can perform frequent handling. *See, e.g.*, *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013) ("If the ALJ disbelieved [claimant], he needed to explain that finding in order to build a logical bridge . . . .").

### B. Plaintiff's Mild Limitations in Concentration, Persistence, and Pace

Plaintiff also argues that although the ALJ found mild limitations in concentrating, persisting, and maintaining pace, she did not use these findings in (1) her RFC analysis or (2) in her hypothetical questions to the vocational expert. Dkt. 12 at 22–25; dkt. 19 at 3. The Commissioner counters that the ALJ properly assessed Plaintiff's limitations. Dkt. 18 at 7–10.

#### 1. RFC Analysis

The ALJ found that Plaintiff "has a mild limitation" in concentrating, persisting, or maintaining pace. Dkt. 8-30 at 12, R. 1816. A "mild limitation" means that a person's ability to function "independently, appropriately, effectively, and on a sustained basis is slightly limited." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00F(2)(b) (Mar. 14, 2018). However, the order does not show that the ALJ took Plaintiff's limitations into account in her RFC analysis. In determining a claimant's RFC, "the adjudicator must consider limitations

12

and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 SSR LEXIS 5, at *14; *Villano*, 556 F.3d at 563.

The Commissioner contends that although the ALJ found that Plaintiff has a slight limitation in concentration, persistence, and pace, she had no need to consider these limitations in the RFC analysis. Dkt. 18 at 11. Several district courts in this circuit have rejected nearly identical arguments. For example, in *Alesia v. Astrue*, 789 F. Supp. 2d 921, 933–34 (N.D. Ill. 2011), the court remanded an ALJ's decision, holding the RFC analysis inadequate because it did not account for the claimant's mild depression, which limited claimant's daily activities, social functioning, concentration, persistence, and pace. *See also Vinzani v. Berryhill*, No. 2:16-CV-62-JEM, 2017 WL 1161013, at *4 (N.D. Ind. Mar. 28, 2017) (remanding because ALJ did not incorporate non-severe "mental limitations into the RFC"); *Paar v. Astrue*, No. 09 C 5169, 2012 WL 123596, at *13 (N.D. Ill. Jan. 17, 2012) (same).

The Commissioner attempts to distinguish these cases by arguing that Plaintiff here has "not point[ed] to any medical evidence in the record" establishing his limitations. Dkt. 18 at 11–12. But the ALJ's opinion states that Plaintiff "has been diagnosed with depressive disorder," suffers from "alcohol abuse," and a "consulting psychologist noted some difficulty with [his] mental control." Dkt. 8-30 at 12, R. 1816. And once a claimant convinces an ALJ of a limitation supported by the record, the ALJ must consider that limitation, no matter how mild, in her RFC analysis. *See id.* at 9, R. 1813 (ALJ

13

"must consider all of the claimant's impairments, including impairments that are not severe."); *Villano*, 556 F.3d at 563. If an ALJ does not use "all limitations supported by medical records" in "determining the claimant's RFC, then remand is required." *Caincross v. Colvin*, No. 1:15-CV-01637-JMS-MPB, 2016 WL 3882024, at *4 (S.D. Ind. July 15, 2016).

### 2. Hypothetical to Vocational Expert

Like her RFC analysis, the ALJ's hypothetical question to the vocational expert also did not mention Plaintiff's limitations in concentrating, persisting, or maintaining pace. Dkt. 8-30 at 58–66, R. 1862–70. "Again, and again, [the Seventh Circuit] ha[s] said that when an ALJ finds there are documented limitations of concentration, persistence, and pace, the hypothetical questions presented to the [vocational expert] must account for these limitations." *Winsted v. Berryhill*, 923 F.3d 472, 476 (7th Cir. 2019) (listing cases). When an ALJ's hypothetical does not adequately capture a claimant's restrictions on concentration, persistence, and pace, district courts should remand the ALJ's decision. *See, e.g.*, *Yurt v. Colvin*, 758 F.3d 850, 858–59 (7th Cir. 2011). For example, in *Yurt,* the Seventh Circuit held that when an ALJ poses a hypothetical question to a vocational expert, the ALJ must inform that expert of "all of the claimant's limitations supported by the medical record," not just some. *Yurt*, 758 F.3d at 857–58. There, the ALJ's explanation to an expert only focused on the claimant's ability to perform "simple, routine tasks." *Id.* at 858–59. It did not account for that claimant's "temperamental deficiencies and

14

limitations in concentration, persistence, and pace." *Id.*  As a result, the Court held the ALJ's decision inadequate. *Id.* at 859.

The ALJ's hypothetical informed the expert that Plaintiff could engage in a "full range of light work." Dkt. 8-30 at 58–59, R. 1862–63.  This explanation neglected any mention of Plaintiff's limitations in concentration, persistence, and pace.  "Because the ALJ did not include [Plaintiff]'s difficulties with concentration, persistence, and pace in the hypothetical . . . , the decision cannot stand." *Winsted*, 923 F.3d at 477.

## IV.
## Conclusion

For these reasons, the ALJ's decision denying Plaintiff benefits from May 18, 2012 through June 10, 2017 is **REVERSED and REMANDED** for further proceedings.  Because neither side has appealed the decision's grant of benefits for the period starting June 11, 2017, the Court **AFFIRMS** that portion of the decision.

**SO ORDERED.**

Date: 10/30/2020

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Lu Han
SOCIAL SECURITY ADMINISTRATION
lu.han@ssa.gov

Timothy J. Vrana
TIMOTHY J. VRANA LLC
tim@timvrana.com

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov